**SHAPIRO & SON BEDSPREAD CORP., Plaintiff,**

v.

**ROYAL MILLS ASSOCIATES, a partnership, Isadore Gindi, Joseph Gindi, Sam Gindi, Alexander's Department Store, Inc., and Roto-Print Machinery Corp., Defendants.**

No. 83 Civ. 4077 (RWS).

United States District Court, S.D. New York.

July 25, 1983.

Kreindler & Relkin, P.C., New York City, for plaintiff by Donald L. Kreindler, Michael J. Gerstein, S. Robert Schrager, New York City, of counsel.

Weinstein & Sutton, P.A., Woodbridge, N.J., for defendants by Ezra Sutton, Woodbridge, N.J., of counsel.

## OPINION

SWEET, District Judge.

Plaintiff Shapiro & Son Bedspread Corp. ("Shapiro") has moved for a preliminary injunction pursuant to Fed.R.Civ.P. 65(a) respecting a claim of copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 501 *et seq.* Shapiro seeks, *inter alia,* to enjoin Royal Mills Associates ("Royal"), Isidore Gindi, Joseph Gindi, Sam Gindi, Joseph Home Decoration, Inc. and Roto-Print Machinery Corp. (collectively "the defendants") from producing, printing, publishing, offering for sale, or selling all or any portion of fabrics, materials and articles bearing the alleged infringing designs similar to Shapiro's textile design known as "Lace Fantasy," allegedly protected by Copyright Registration No. VA 124–327. The parties submitted affidavits, exhibits, briefs and oral argument was heard on July 1, 1983. No evidentiary hearing has been held. For the reasons set forth below, the motion for preliminary relief is denied.

## Background

Shapiro and Royal are competitors engaged in the nationwide manufacture and distribution of bedspreads. According to Shapiro, in 1978, its staff created the "Lace Fantasy" line of bedspreads and accessories. The "Lace Fantasy" line consists of a fabric design with raised printing in conjunction with flat print, giving the illusion of an eyelet fabric design, combined with a specific lace edging, so as to give the bedspread a lace illusion throughout. The eyelet pattern has groups of double eyelets connected by dashed lines. Shapiro alleges protection of its creative efforts in the "Lace Fantasy" by a copyright notice enclosed with each bedspread offered for sale and sold to retailers and ultimately the general public. Until sometime on or about the registering of the copyright with the United States Copyright Office in May of 1983, that notice consisted of the words "Design Copyrighted" on the flyer or insert contained within the heat-sealed plastic packaging of the bedspread. Shapiro claims that it now includes copyright notice on sewn-in labels bearing the words "Copyright by Everwear."

Since the time of first publication of the "Lace Fantasy" in October, 1978, Shapiro has sold more than 500,000 units of bedspreads and accessories in its "Lace Fantasy" style, alleged to be its single best selling style. "Lace Fantasy" is marketed in eight colors of which the rose, natural and blue are alleged to be the most successful. Shapiro's sales of the "Lace Fantasy" have been supported by extensive nationwide advertisement. Sometime during April, 1983, Shapiro claims to have received information that its bedspreads with its "Lace Fantasy" design were being sold by Royal under the name of "Lace Splendor" at a lower price. On May 9, 1983, Shapiro registered its "Lace Fantasy" design with the Copyright Office, Registration No. VA 124–327. Its application included a copy of a flyer with the words "Design Copyrighted" in addition to a copy of a label that had been affixed to bedspreads with the words "Copyright by Everwear" typed in.

Royal alleges that during the end of 1982, it decided to use a triple eyelet pattern similar to one designed and offered to Royal by Mastex Industries of New York ("Mastex"). Two years ago, Royal alleges that it received swatches of a Mastex pattern, which show eyelet patterns having groups of triple eyelets connected by dashed lines, that the pattern was offered to the trade as an "open pattern," that it was engraved in the early part of 1978, and that since then, Mastex has printed it for various manufacturers. The lace trim for its "Lace Splendor" spread was alleged to have been designed by Native Textiles of New York City ("Native"). Royal produced the "Lace Splendor" bedspreads and accessories in beige, pink and blue, colors alleged to be the most popular of the industry.

Several weeks after oral argument, Royal submitted an additional affidavit containing a swatch of material with an eyelet pattern practically identical to "Lace Fantasy" of Shapiro. It is alleged that bedspreads are being sold with this pattern under the name "Seal of Quality" and distributed by Levenson's Fifth Avenue of New York City ("Levenson's"). Royal was advised that Levenson's has been selling these products for three to four years, and purchasing them from a converter, Howard Kaplan, Inc., who was providing the products without copyright notice. Mr. Kaplan is asserted to have told Royal that his company supplies Shapiro with the eyelet pattern for its "Lace Fantasy," and that the same pattern has been supplied to Levenson's for the last few years. This affidavit constitutes hearsay and is entitled to little, if any, evidentiary weight.

Written demand was made by Shapiro upon the defendants to cease their alleged infringement of Shapiro's "Lace Fantasy" design. That demand was rejected and defendants advised that they intended to continue manufacturing and selling the "Lace Splendor." This action ensued.

## Preliminary Relief

A party is entitled to preliminary injunctive relief if it shows:

possible irreparable harm and either (1) probable success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 206 (2d Cir.1979). *See also Jackson Dairy, Inc. v. H.B. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979).

■ In the copyright context, an infringement claim turns on two elements: plaintiff must establish its ownership of a valid copyright and defendant's copying. *Novelty Textile Mills v. Joan Fabrics Corp.,* 558 F.2d 1090, 1092 (2d Cir.1977). Shapiro's certificate of copyright registration, made within five years of first publication, constitutes prima facie evidence of Shapiro's valid copyright in the "Lace Fantasy" design. 17 U.S.C. § 410(c).[1] It is clear, however, that a certificate of registration creates no irrebuttable presumption of copyright validity. Where other evidence in the record casts doubt on the question, validity will not be assumed. *Durham Industries, Inc. v. Tomy Corporation,* 630 F.2d 905, 908 (2d Cir.1980). *See also Midway Mfg. Co. v. Dirkschneider,* 543 F.Supp. 466, 481 (D.Neb.1981) (copyright registration is not prima facie evidence that the notice requirement has been satisfied). Royal claims that Shapiro forfeited its copyright by producing over a four-year, eight-month period approximately 500,000 copies of the work without proper copyright notice.

■ Royal is correct in asserting that the notice on Shapiro's flyer would have been improper and defective copyright notice under the 1909 copyright law in that it was not "affixed" to copies of the works as required by section 401(c) of the Copyright Act, 17 U.S.C. § 401(c). As noted by the leading authority in copyright law:

> The Courts, however, held that a notice contained on a tag attached to the work would not constitute an adequate affixa-

tion. This for the reason that such a notice is detachable and may eventually be detached and discarded when the work is put to use. Similarly, notice on a wrapper or container, which is not part of the work and which eventually may be removed and discarded when the work is put to use, was said to constitute a defective notice.

2 M. Nimmer, *Nimmer on Copyright* § 7.10[c] (1983) (citations omitted) ("Nimmer"). *See Original Appalachian Artworks, Inc. v. Toy Loft,* 684 F.2d 821, 827 & n. 7 (11th Cir.1982); *Gardenia Flowers, Inc. v. Joseph Markovits, Inc.,* 280 F.Supp. 776 (S.D.N.Y.1968); *Ross Prods. Inc., v. New York Merchandise Co.,* 233 F.Supp. 260 (S.D.N.Y.1964); *Peter Pan Fabrics, Inc. v. Dixon Textile Corp.,* 188 F.Supp. 235 (S.D.N.Y.1960).

Shapiro's reliance on *Uneeda Doll Co. v. Goldfarb Novelty Co.,* 373 F.2d 851 (2d Cir.), *cert. dismissed,* 389 U.S. 801, 88 S.Ct. 9, 19 L.Ed.2d 56 (1967), and *Monogram Models Inc. v. Industro Motive Corp.,* 492 F.2d 1281 (6th Cir.), *cert. denied,* 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974), is misplaced. In *Uneeda Doll Co.,* a display package with a three-sided transparent plastic window was held to be an "integral part" of the doll sold within such package so as to validate the notice contained on the package. *See* 2 Nimmer § 7.10[c]. There, the display package remained useful after sale as a "keeping place" for the doll. 373 F.2d at 853. In *Monogram Models, Inc.,* the court, in what Nimmer calls a "rather questionable application" of the "integral part of the work" principle, held that instruction sheets and container boxes constituted "integral parts" of model airplane kits so that notices affixed to the sheets and boxes served to protect the kits. 492 F.2d at 1284. The flyer enclosed with the bedspread cannot be said to be an "integral part" of the work as contemplated by the authorities set forth

---

1. The defendants have offered no proof that the registration was not accomplished within five years of publication.

above. Flyers are generally discarded with the unwrapping of the bedspread.[2]

■ Under the new copyright law, however, publication of copies of a work with defective notice does not necessarily impair an author's copyright protection. Section 405(a)(2) of the Copyright Act of 1976, 17 U.S.C. § 405(a)(2), provides that an omission of copyright notice is excused if:

registration for the work has been made before or is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered.

Although this section refers to "omissions" of notice, it would appear that section 405(a)(2) is applicable in this case as well. *See Original Appalachian Artworks, Inc. v. Toy Loft, supra,* 684 F.2d at 826 (copyright notices were improper because the notices were placed on detachable name tags). *Cf.* 17 U.S.C. § 406(c) (where copies contain no name or date, the work is considered to have been published without any notice and is governed by the provisions of section 405).[3]

■ If the omission of copyright notice is not excused pursuant to section 405(a), the legal consequence is the forfeiture of the copyright and release of the work into the public domain. *Beacon Looms, Inc. v. S. Lichtenberg & Co., Inc., supra,* 552 F.Supp. at 1309; 2 Nimmer § 7.14[A][1]. Shapiro contends that although its "Lace Fantasy" copyright notice may have been "technically" defective for four years and eight months, such defect has been cured since "a reasonable effort [has been] made to add notice to all copies ...", 17 U.S.C. § 405(a)(2). *See Original Appalacian Artworks, Inc. v. Toy Loft, supra,* 684 F.2d at 827; *Beacon Looms, Inc. v. S. Lichtenberg & Co., Inc., supra,* 552 F.Supp. at 1310; *Florists' Transworld Delivery Ass'n v. Reliable Glassware and Pottery Co.,* 213 U.S. P.Q. 808 (N.D.Ill.1981); *P. Kaufman, Inc. v. Rex Curtain Corp.,* 203 U.S.P.Q. 859, 860 (S.D.N.Y.1978). Shapiro's application for copyright registration included, in addition to a copy of the flyer, a copy of its label that had been "affixed" to the bedspreads with the words "Copyright by Everwear" typed in.[4] Shapiro claims that it now in-

2. Despite the 1976 Copyright Act's liberalization of certain of the notice requirements of the 1909 Act, the type of insert used by Shapiro is still defective or improper because, in addition to the fact that it is not "affixed" to the bedspreads, there may be some confusion with respect to the name "Everwear," namely, its position on the flyer vis a vis the words "Design Copyrighted." One of the flyers submitted also includes the phrase "Designed by Mr. Sid," and a reasonable observer would certainly be confused as to the name or designation of the owner of the copyright, *see* 17 U.S.C. § 401(b)(3). Also, it would appear that the year of first publication is required as well, *see* 17 U.S.C. § 401(b)(2).

3. Shapiro has not indicated when it discovered that its notice was improper, nor has it offered an explanation as to how it came to include what it claims to be proper copyright notice on sewn-in tags sometime during the spring of 1983. It is presumed that counsel apprised Shapiro of its obligations to "affix" copyright notice on the bedspreads under 17 U.S.C. § 401(c). *See Florists' Transworld Delivery v. Reliable Glassware Co.,* 213 U.S.P.Q. 808, 810 (N.D.Ill.1981). It appears, then, that Shapiro made a "mistake of law." Under the Copyright Act of 1909, a mistake of law was not the type

of mistake which would permit invoking the savings provisions of section 21 of that Act. *See Puddu v. Buonamici Statuary, Inc.,* 450 F.2d 401 (2d Cir.1971); *Gardenia Flowers, Inc. v. Joseph Markovits, Inc.,* 280 F.Supp. 776 (S.D.N.Y.1968). However, given that section 405(a) of the Copyright Act of 1976 "represents a major change in the theoretical framework of American copyright law," H.R.Rep. No. 94–1476, 94th Cong., 1st Sess. 147 (1976), U.S. Code Cong. & Admin.News, pp. 5659, 5763, *reprinted in* 17 U.S.C.A. § 405 Historical Note, and that Congress recognized the often unjust and harsh consequences of forfeiture that resulted from publication with no notice or defective notice under the old Act, *see* Report of the register of Copyrights on the General Revision of the U.S. Copyright Law, 87th Cong., 1st Sess. 63 (July, 1961), it would seem that mistakes of law were intended to fall within the ambit of section 405(a). Neither party has argued to the contrary.

4. The defendants assert that Shapiro should have apprised the Copyright Office of the fact that 500,000 copies of "Lace Fantasy" included only the flyer described in the text, *supra.* However, it should be noted that even if registration occurs after omission, the registration

cludes such notice on the tags sewn into each bedspread in the manner evidenced by the sewn-in tag "affixed" to the bedspread submitted to the court for inspection.

Royal argues that Shapiro has failed to make a "reasonable effort" to add notice to the bedspreads. There is little guidance on the question of what constitutes "reasonable effort" under section 405(a)(2) of the Copyright Act, *see Florists' Transworld Delivery v. Reliable Glasswear Co., supra,* 213 U.S.P.Q. at 811, and "it remains for the cases to indicate just how much effort is 'reasonable,'" 2 Nimmer § 7.13[B] (citing *P. Kaufman, Inc. v. Rex Curtain Corp.,* 203 U.S.P.Q. 859 (S.D.N.Y.1978)); *see also Beacon Looms, Inc. v. S. Lichtenberg & Co., Inc., supra.* Royal does not appear to contest the propriety of the notice on the sewn-in labels claimed by Shapiro to be currently "affixed" to its bedspreads.[5] Royal argues, however, that Shapiro should also be required to make some effort to ascertain the quantity of improperly-noticed bedspreads in the possession of its customers which have not yet reached the hands of the consumer-public, and make some "reasonable" attempt to add notice to those copies. Shapiro concedes that it had made no such effort, but that the "reasonable effort" requirement is prospective. Shapiro argues that even if it is not, its earlier notice, albeit defective, constitutes "actual notice," and that therefore, no effort to add notice to those copies distributed by Shapiro prior to its discovery of the omission of proper notice is required.

I conclude that Shapiro should have at least come forth with evidence concerning those copies distributed prior to discovery of the omission [6]—how many copies were still in the hands of its dealers and what steps, if any, could have reasonably been taken to cure the lack of proper notice as to those copies. Indeed, the leading authority on copyright law has stated:

> Suppose, however, that prior to such discovery copies or phonorecords are distributed to retail dealers, but the discovery occurs before such copies or phonorecords have been distributed by such dealers to the consumer-public. Does the copyright owner have the duty to make a reasonable effort to add the notice to such copies and phonorecords in the possession of the retail dealers? It would appear that there is such a requirement in that such copies and phonorecords will still be "distributed *to the public* . . . after the omission has been discovered." In any event, no more than "a reasonable effort" need be expended in remedying the omission of notice on later distributed copies and phonorecords. It remains for the cases to indicate just how much effort is "reasonable."

2 Nimmer § 7.13[B] (footnotes omitted) (emphasis in original). In this connection, the plaintiff in *Florists' Transworld Delivery Ass'n v. Reliable Glassware and Pottery, Inc., supra,* sent notice labels to the copies previously sent to such dealers. The court denied defendant's motion for summary judgment on the ground that whether this constituted "reasonable effort" upon the part of plaintiff constituted a genuine issue of material fact. 213 U.S.P.Q. at 811. Similarly, in *P. Kaufman, Inc. v. Rex Curtain Corp., supra,* a customer of the plaintiff would affix notice stickers if they had not been already affixed, and plaintiff was found to have "taken very prompt steps to remedy the omission which was apparently inadvertent." 203 U.S.P.Q. at 860.

Most persuasive, however, is the teaching of *Beacon Looms, Inc., supra.* In that case, the parties were competitors in the manufacture and distribution of curtains. The defendant purchased dyed fabric bearing

---

application need not refer to the prior omission of notice. 2 Nimmer § 7.13[B] n. 34 (citation omitted).

**5.** Note, however, it would appear that section 401(b) of the Copyright Act, 17 U.S.C. § 401(b), requires the year of first publication of the work in this case.

**6.** As suggested in note 2, *supra,* it is presumed that discovery of the omission of proper notice here occurred around the time Shapiro sought to enforce its alleged copyright.

the "Linda" design from a Canadian company for exclusive distribution in the United States. There was no discussion of copyright at that time. About one year later, a competing curtain manufacturer copied defendant's pattern. The defendant was aware of the "knock-off" but took no steps whatsoever to protect its design. About a year later, shortly before the lawsuit was brought, the plaintiff manufactured curtains with the same design, at which time the Canadian company informed the defendant for the first time that copyright was "claimed" by the company, and authorized the defendant to register a claim to copyright. The plaintiff sued the defendant seeking injunctive and declaratory relief against the defendant's assertions of, *inter alia,* copyright infringement. The plaintiff moved for preliminary relief enjoining the defendant from alleging or asserting that the plaintiff was infringing any copyright in the "Linda" pattern.

The Hon. Leonard B. Sand granted preliminary relief. The defendant had argued that it held a valid copyright since under section 405(a)(2) it had made a "reasonable effort" to cure the omission of copyright notice upon discovery of the availability of copyright by affixing notice to the curtains thereafter. In a well-reasoned and thorough analysis of section 405(a)(2), Judge Sand concluded that the provision relates solely to unintentional omissions and that defendant's omissions had been deliberate. 552 F.Supp. at 1310–13.[7] Thus, the omission was incapable of cure and the design had been injected into the public domain. *Id.* at 1313.

In an alternative holding, Judge Sand stated that even if the court assumed, as the defendant argued, that its omission was susceptible of cure under section 402(a)(2), it failed to employ "reasonable efforts" in affixing notice after its discovery of the availability of copyright. Judge Sand stated:

> We find that the reasonable efforts requirement was in fact not met here. As Alan Lichtenberg testified, defendant has sold to its retailing customers approximately 900,000 panels in the past nine months. Yet, defendant ordered and sent out to such customers a total of 50,000 pressure-sensitive labels bearing the copyright notice without ascertaining the quantity of curtains they still held in inventory. Alan Lichtenberg testified that it was his view that the number of labels sent out were insufficient to allow defendant's customers to affix notice to all of the Linda panels that they had in inventory. The minimal additional expense and effort that ordering and sending sufficient labels to cover its customers' inventory would entail speaks to the inadequacy of its effort. It is insufficient in this regard that defendant informed its customers that "[a]dditional labels if needed will be sent". Defendant was by no means assured that customers would in fact promptly communicate the shortfall; indeed, defendant failed even to inform its customers to affix whatever labels they received at least on those panels being publicly displayed for purposes of sale, as required by the statute, requesting instead only that they be affixed to those panels "currently in stock".

*Id.* at 1313. Judge Sand, for the purposes of this alternative holding, accepted the defendant's argument that it discovered the omission of copyright notice upon the discovery of the availability of copyright on or about October 7, 1982, approximately one month before the lawsuit was filed.[8] However, Judge Sand did not limit his analysis

---

7. There has been no suggestion in this case that Shapiro deliberately omitted proper notice.

8. Judge Sand had concluded earlier in his decision that in the case of a deliberate omission of notice, section 405(a)(2) is inapplicable since such application would "do violence" to the statutory phrase "after the omission has been discovered." 552 F.Supp. at 1310–11). If an omission is deliberate, there can be no "dis-

covery" thereof. *Contra O'Neill Developments, Inc. v. Galen Kilburn, Inc.,* 524 F.Supp. 710, 714 (N.D.Ga.1981) (application of section 405(a)(2) applies to both *deliberate and unintentional* omissions and phrase "after the omission has been discovered" means "after 'discovery' of fact that the existence of a copyright has become an issue").

to the curtains sold by the defendant after October 7, 1982; rather, the evidence before him indicated that 900,000 panels had been sold to the defendant's retail customers in the past *nine* months. The clear import of Judge Sand's analysis is that the quantity of copies still held in inventory not yet distributed to the consumer-public must be ascertained as must the expense and effort involved in affixing proper notice to these copies. Only then may the court properly assess whether the efforts to cure have been "reasonable." This construction of the "reasonable efforts" requirement has the effect of providing notice with respect to those copies distributed prior to discovery of the omission or improper notice but not yet in the hands of the consumer-public, thereby avoiding further infringement as well as providing notice to the consumer-public.

Shapiro's contention that even under this construction, it need not come forward with any evidence concerning the copies with defective notice since the flyer with the words "Design Copyrighted" meets the "reasonable efforts" requirement must be rejected. That this case is somewhat distinguishable from those involving a complete omission of notice does not automatically relieve Shapiro of its obligation to make a reasonable effort to add proper notice or to demonstrate that any such effort is impractical under the circumstances. And to the extent it relies on an assumption that the flyer constitutes "actual notice" of copyright, Shapiro has submitted no evidence to rebut defendant's assertion supported by an exhibit that, in fact, Shapiro includes flyers having the words "Design Copyrighted" on many of its patterns, including those which do not have any fabric design. Arguably, Shapiro's use of these words on flyers may be meaningless in the trade in terms of signifying copyright.

■ Shapiro has not thus far presented any evidence that a "reasonable effort" has been made to add notice to all copies that are distributed to the public after the omission was discovered. Absent such a showing, the omission of copyright notice is not excused pursuant to section 405(a) and the legal consequence is the forfeiture of the copyright and release of the work into the public domain. *Beacon Looms, Inc. v. S. Lichtenberg & Co., Inc., supra,* 552 F.Supp. at 1309. From the foregoing, I must conclude that Shapiro has demonstrated neither a likelihood of success on the merits nor sufficiently serious questions going to the merits to make them a fair ground for litigation, and therefore, preliminary relief is denied.

Although it is unnecessary to reach the second element of the infringement claim, that is, copying, *see Novelty Textile Mills v. Joan Fabrics Corp., supra,* 558 F.2d at 1092, some observations are in order. Royal seeks to introduce evidence concerning its dealings with Mastex to support its claim of the "independent creation" of its "Lace Splendor" design. *See id.* at 1092 n. 2 (defendant may introduce evidence of independent creation which would rebut the plaintiff's prima facie case); 3 Nimmer § 12.-11[D] n. 41 (independent creation includes copying from sources other than the plaintiff). Shapiro has submitted an overlay of Royal's "Lace Splendor" design on Shapiro's "Lace Fantasy" pattern. In response, Royal has submitted a rough overlay of its "Lace Splendor" design on the pattern alleged to have been offered by Mastex.

Regarding Shapiro's overlay, except for the fact that its design has double eyelet and Royal's has triple eyelets, the two are strikingly similar. The identity of size, dimension, curve and angle is so striking that the conclusion that Royal's design was created by laying tracing paper on Shapiro's pattern would not be an unreasonable one. Although, Royal's overlay evidences similarities between its design and the Mastex pattern, the two are far from identical, and the dissimilarities are highlighted by comparison with the Shapiro overlay. The defendants, of course, are entitled to submit additional evidence on their "independent creation" claim at trial.

For the reasons stated above, Shapiro's motion for a preliminary injunction is denied.

Discovery is to be completed by October 24, 1983 and the pretrial order is due on October 31, 1983.

IT IS SO ORDERED.