**UNITED FEATURES SYNDICATE, INC., Plaintiff,**

v.

**SPREE, INC., Super Shirts, Inc., Top Tease, Inc., Lawrence Kleiman, and Neil Kleiman, Defendants.**

Civ. A. No. 83–4150.

United States District Court,
E.D. Michigan, S.D.

Dec. 21, 1984.

Karen B. Newborn, Cleveland, Ohio, for plaintiff.

Abel J. Selburn, Southfield, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

### FINDINGS OF FACTS

The cat with the bulging eyes, orange-colored fur and anthropomorphic characteristics—he loves to eat, cannot diet, and hates Mondays—is the cartoon character named "Garfield." His floppy-eared, long-tongued and long-necked sidekick, who also has bulging eyes, is the dog named "Odie." They are characters of the "GARFIELD" comic strip. Since the introduction of the "GARFIELD" strip in the mid-1970's, the comic strip and its characters have gained world-wide popularity.

Plaintiff United Features Syndicate, Inc. has been commissioned by Jim Davis, the characters' creator, as the sole proprietor of all right, title and interest in and to registered copyrights which cover the "GARFIELD" comic strip and the "Garfield" and "Odie" characters. The Register of Copyrights has duly issued certificates of registration to plaintiff and plaintiff has published notice of its copyright ownership. Plaintiff alleges here, *inter alia*, that defendants Neil Kleiman, Lawrence Kleiman, Super Shirts, Inc., Spree, Inc., and Top Tease, Inc. have violated the Federal Copyright Act of 1976, 17 U.S.C. § 101 et seq. (1982) (the Act).

Defendant Neil Kleiman is a Michigan resident who is the sole stockholder of Top Tease, Inc., a corporation organized and existing under the laws of the state of Michigan. Top Tease, Inc., also a defendant, is engaged in the business of selling novelties, heat transfers, silk screen shirts and other items. Neil Kleiman is solely responsible for purchasing and controlling Top Tease, Inc.'s inventory. Defendant Lawrence Kleiman, Neil Kleiman's brother, is also a Michigan resident. He is the majority stockholder and officer of Spree, Inc. and an employee of Top Tease, Inc. Two other defendants, Spree, Inc., and Super Shirts, Inc., are corporations organized and existing under the laws of the state of Michigan. They are presently subjects of bankruptcy proceedings pursuant to Chapters 11 and 7 respectively, of the Bankruptcy Act, 11 U.S.C. § 101 et seq. (1982). Super Shirts, Inc., was a business engaged in retailing T-shirts, transfers and other merchandise. Before it was declared bankrupt between 1982 and 1983, Neil Kleiman was solely responsible for purchasing and controlling its inventory. Spree, Inc. was in the business of retailing various kinds of merchandise. Before bankruptcy proceedings were begun in reference to it, Lawrence Kleiman had sole managerial responsibility for purchasing and controlling its stock.

The defendants have been accused of knowingly and willfully purchasing and selling T-shirts and heat transfers with the likenesses of "Garfield" and "Odie" imprinted on them: some of which transfers included the name "Garfield." Plaintiff alleges that, contrary to the Act, defendants have been purchasing and selling such merchandise without plaintiff's authorization and without the appropriate copyright line which plaintiff requires its distributors, manufacturers and licensees to use. Plaintiff alleged further that defendants' con-

duct is likely to deceive plaintiff's customers and members of the general public, and to cause irreparable harm to plaintiff's business, reputation and good will.

In response to these allegations, defendants contend that they admit liability to the plaintiff for a "technical" violation of the law. Defendants say they sold heat transfers and T-shirts which they purchased from the manufacturer All Horizons. They deny that they were aware of any copyright infringement prior to the filing of the instant lawsuit and that their purchases and sales were willful violations of plaintiff's copyright ownership.

It is undisputed that defendants had at least constructive knowledge, if not actual knowledge, that the cartoon characters which are the subject of this suit were copyrighted and that despite that knowledge, the defendants and/or their agents purchased and sold merchandise in a manner violative of the Act. In a joint pre-trial order filed September 20, 1984, defendants stipulated that they are liable to plaintiff for violating plaintiff's copyrights in the "GARFIELD" characters; that they were aware that federal copyright laws existed to permit the creators of original works to have exclusive authority to reproduce those works; and that even though they knew the "GARFIELD" characters were copyrighted, they sold T-shirts and heat transfers which were not licensed by plaintiff. On this basis, on December 11, 1984, this court commenced and completed a bench trial on the only remaining issue: the amount of damages to which plaintiff was entitled.

## INJUNCTION

■ As compensation for defendants' unlawful acts, plaintiff has requested that this court order a permanent injunction against the defendants' direct or indirect infringement of plaintiff's copyrights to the "GARFIELD" comic strip and the "Garfield" and "Odie" characters; that defendants be ordered to pay maximum statutory damages as a consequence of defendants' willful infringement of the copy-rights; and, that defendants be ordered to pay plaintiff's costs and reasonable attorneys' fees incurred from this lawsuit.

First, plaintiff demands a permanent injunction against defendants' further infringement of plaintiff's copyrights in any manner. Section 502 of title 17 of the United States Code provides that this court may grant temporary and final injunctions on terms that it deems reasonable. Injunctions have been granted in cases where there has been a finding that defendants have infringed a copyright. *See, e.g., United Feature Syndicate v. Sunrise Mold Co.*, 569 F.Supp. 1475, 1482 (S.D.Fla.1983); *Monogram Models, Inc. v. Industro Motive Corp.*, 492 F.2d 1281, 1286 (6th Cir. 1974), *cert. denied*, 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974). Injunctions have also been granted in situations where defendants are likely to cause or perpetuate additional infringements and where money damages will not suffice. *Lauratex Textile Corp. v. Allton Knitting Mills*, 519 F.Supp. 730, 732 (S.D.N.Y.1981).

The defendants in this case are not first time offenders. Neil and Lawrence Kleiman did know that copyrights of some cartoon characters exist because they have been sued by plaintiff on two previous occasions for infringement of plaintiff's copyrights in the "PEANUTS" characters. *United Features Syndicate, Inc. v. Ego, Inc. and Lawrence Kleiman*, Civil Action No. 970689 (1979); *United Features Syndicate, Inc. v. Neil's Fads, Inc. and Neil Kleiman*, Civil Action No. 871045 (1979). Defendants Neil and Lawrence Kleiman have also been sued by Walt Disney for infringement of its copyrights in the Disney characters and by Aucoin Management, Inc., owners of copyrights in the KISS musical group's characters and facial characterizations. The present case represents the fifth copyright infringement action that has been filed against Neil and/or Lawrence Kleiman. These lawsuits have not deterred defendants from further infringing activity.

As there is a history and therefore a threat of continuing violations by defend-

ants, they are hereby enjoined, for the life of plaintiff's copyright, and any renewal thereof, from committing any further infringement of plaintiff's copyright by selling, purchasing or causing to be purchased or sold, articles with the "GARFIELD" characters, or any substantial likenesses thereof, depicted on them. *Universal City Studios, Inc. v. Sony Corp. of America,* 659 F.2d 963, 976 (9th Cir.1981); *Gordon v. Weir,* 111 F.Supp. 117 (E.D.Mich.1953), *aff'd,* 216 F.2d 508 (1954).

### DAMAGES

Section 504(a) of the Act states that a copyright infringer is liable for either "(1) the copyright owner's actual damages and any additional profits of the infringer ... or (2) statutory damages ...." Section 504(b) and (c) delineate the damages this court may grant and plaintiff may elect to receive for copyright infringements. Section 504(c)(1) of the Act further provides that the copyright owner may elect to receive statutory damages instead of an award of actual damages, in the sum of not less than $250.00 but not more than $10,-000.00. In cases where the court finds that the defendants have committed a willful infringement of a copyright, the court may increase the award of damages to an amount which does not exceed $50,000.00 per infringement. 17 U.S.C. § 504(c)(2) (1982); *Kamakazi Music Corp. v. Robbins Music Corp.,* 534 F.Supp. 69, 74 (S.D.N.Y. 1982). The maximum and minimum restrictions of the statute are mandatory. *Douglas v. Cunningham,* 294 U.S. 207, 210, 55 S.Ct. 365, 366, 79 L.Ed. 862 (1935); *Milene Music, Inc. v. Gotauco,* 551 F.Supp. 1288 (D.C.R.I.1982).

Here, plaintiff has exercised its option to request statutory damages. Several courts, including a Michigan court, have recognized a copyright owner's option to ask for statutory damages when neither the owner's actual damages nor the infringer's profits are ascertainable or are difficult to calculate, as is the case here. *See Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.,* 725 F.2d 1, 2–3 (1st

Cir.1983); *Russell v. Price,* 612 F.2d 1123, 1129 (9th Cir.1979); *Robert Stigwood Group Ltd. v. O'Reilly,* 530 F.2d 1096, 1101 (2d Cir.1976); *Monogram Models, Inc.,* 492 F.2d at 1288; *Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908, 914–15 (D.Conn.1980). *See generally Rodgers v. Breckenridge Hotels Corp.,* 512 F.Supp. 1326 (E.D.Mo.1981).

■ These statutory damages, often referred to as in lieu damages, are also mandated in cases where there is not a showing of the copyright proprietor's actual loss. *Jewell-LaSalle Realty Co. v. Buck,* 283 U.S. 202, 206–09, 51 S.Ct. 407, 408–09, 75 L.Ed. 978 (1931); *R. Dakin & Co. v. A & L Novelty Co., Inc.,* 444 F.Supp. 1080, 1085 (E.D.N.Y.1978). When either profits or damages are difficult to prove, courts have also resorted to in lieu damages. In *Douglas v. Cunningham,* 294 U.S. 207, 55 S.Ct. 365, 79 L.Ed. 862 (1935), the Supreme Court explains the Congressional intent upon adopting the statute;

> The phraseology of the section was adopted to avoid the strictness of construction incident to a law inquiry imposing penalties, and to give the owner of a copyright some recompense for injury done him, in a case where the evils of law render difficult or impossible proof of damages or discovery of profits.

*Id.* at 209, 55 S.Ct. at 366. *See also Hiawatha Card Co. v. Colourpicture Publishers, Inc.,* 255 F.Supp. 1015, 1019 (E.D.Mich. 1966). One court has held that a wronged copyright proprietor may elect to receive statutory damages whether or not its actual damages or the infringer's profits are ascertainable. *Harris v. Emus Records Corp.,* 734 F.2d 1329 (9th Cir.1984). In this case, the failure of defendants to keep records had made their profits unascertainable.

In *F.W. Woolworth Co. v. Contemporary Arts,* 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952), the United States Supreme Court limited its decision to the amount of damages plaintiff should receive for defendant's infringement of a work of art. Although it was established that the

defendant had made a profit, the Court was unable to determine the actual sustained amount of plaintiff's damages. But the Court still concluded that plaintiff had incurred real and substantial injury. There was evidence that the infringing art was inferior in quality, as in this case. *Id.* at 230, 73 S.Ct. at 224. The Court held that the statute gives the trial court broad discretion to determine whether justice would be served by allowing recovery based upon proven actual damages and profits or an arbitrary estimate within the range prescribed by the Act. The Court decided that inadequate proof of the amount of damages would warrant use of the statutory damages. *Id.* at 231–33, 73 S.Ct. at 224–25.

■ Although the court cannot state the value of plaintiff's copyright in the "GARFIELD" characters, we do know that the copyright is of great value to plaintiff. Because the copyright to the "GARFIELD" comic strip and its characters is of such great value to plaintiff, plaintiff's licensing program for use of the copyright is carefully cultivated and protected. Michael Goergopolis is plaintiff's Senior Vice-President in charge of licensing. He is responsible for seeing that the subjects of the copyrights are extended into worldwide marketing, and maintains stringent quality control of manufactured products and licensing. He testified most credibly on plaintiff's behalf.

Among other things, Georgopolis described plaintiff's licensing procedure for authorized use of the "GARFIELD" characters. In 1978, plaintiff and Jim Davis, the cartoon's creator, reached an agreement that plaintiff would have exclusive rights to handle copyright material for the "GARFIELD" characters. Two years later, Georgopolis had formulated the original marketing and licensing program which governs marketing, planning and developing licensees. A complex approval system is used for licensing. The first stage is concept submission—the proposed licensee submits an idea for category screening and plaintiff's officers determine copyright application effectiveness based on the idea presented. Then a prototype is prepared and examined. Next, the idea goes through pre-production and post-production stages, always under strict quality control.

After the product is approved, there is an ongoing quality control program. Plaintiff's representatives actually visit stores to insure that licensees adhere to plaintiff's standards. Presently, there are two hundred fifteen licensees who are licensed to sell, distribute and otherwise manage plush toys, T-shirts, and promotional activities. In addition to that, plaintiff has issued licenses for three television programs and several magazine articles. Plaintiff's retail sales which relate to the "GARFIELD" characters are in very large figures. "Garfield" books have occupied the *New York Times* best seller list for substantial periods and set a record by holding two places on the list simultaneously.

All licensed products carry the copyright line as required by law and licensees are required to designate the copyright on the product. Gerald McVittie, an investigator, testified that in each of defendants' stores, he had seen displayed and bought T-shirts and/or heat transfers with the likenesses of "GARFIELD" characters, all of poor quality. McVittie said he observed four "Garfield" transfers on display in a Spree store. Those shirts did not bear the copyright line which plaintiff and its licensees use on all licensed products. The court had the opportunity during the trial to examine the T-shirts and heat transfers McVittie had purchased and it had the opportunity to view items which had been properly licensed and copyrighted to be sold. It is clear that the unlicensed products were of substantial likeness, although of lesser quality, and would tend to confuse and mislead the public that defendants were licensed to sell products by the plaintiff, and that defendants' goods were not of good quality.

Georgopolis also testified that they have never licensed heat transfers because plaintiff's quality standards cannot be upheld in transfers. The copyright is of great significance to plaintiff because it values its own

reputation as an asset, and it must also act as caretaker of the reputations of the talented clients it represents. Georgopolis opined that infringers place licensees in a bad position because for every infringing article that is sold, the licensees lose a good sale. In *Burndy Engineering Co. v. Sheldon Service Corp.*, 127 F.2d 661 (2d Cir. 1942), the Court of Appeals for the Second Circuit held that notwithstanding proof of the infringer's profit; if the evidence shows that the infringer's good will was promoted by his use of the infringing items and the copyright owner's good will was impaired in a manner that is not shown in the proof of profits, statutory damages should be awarded.

Maximum statutory damages are appropriate in this case because defendants' conduct was willful: having been carried forward despite four previous unsuccessful lawsuits for copyright infringements. Both Neil and Lawrence Kleiman have testified that they did not pay much attention to copyrights, and felt no duty to examine or inquire concerning them. This testimony is incredible in light of the fact that these defendants have been sued four times and never prevailed. Two of those suits resulted in consent judgments which each defendant admitted he had signed. One paragraph of each judgment includes a statement that Neil and Lawrence would refrain from further infringement of United Features Syndicate's rights under the copyright laws.

Neil Kleiman testified that he relied upon sales representatives' statements that the T-shirts he bought were not infringements. He testified that he had purchased licensed T-shirts from the Brandywine Company. Georgopolis had testified that Brandywine is the only corporation licensed to sell T-shirts for plaintiff.

Lawrence Kleiman testified that he did not realize that checking for copyrights was something he was supposed to do. Certainly, he may have presented that argument in response to his first lawsuit, and we do not address its likelihood of success, but this lawsuit represents the fifth time

he or his brother has been accused of copyright infringement. Later, defendant Lawrence Kleiman admitted that he is now aware of copyright requirements but he does not know how to go about ascertaining whether an article is copyrighted. Their testimony was disingenious, at the least.

The defense that the sale of T-shirts as compared to the volume of other goods sold by defendants is minimal is not persuasive under the circumstances. Defendant Neil Kleiman testified that the sale of T-shirts was insignificant to his business. He testified that three dozen of the infringing T-shirts were ordered and that all except seven or nine were accounted for and returned to the seller upon his receipt of plaintiff's notice of infringement. Neil Kleiman testified that he might have sold twenty shirts because the demand for "Garfield" T-shirts has subsided. The damage plaintiff had suffered cannot be minimized by defendants' small number of sales. Defendants were displaying poor quality, damaging knockoffs in several shopping malls throughout southeastern Michigan. The *F.W. Woolworth Co.* Court noted that the purpose of statutory damages was to "compel restitution of profit and reparation for injury" as well as to discourage future infringements. The court even concluded that statutory damages could be awarded when the infringements have not yielded a profit. 344 U.S. at 233, 73 S.Ct. at 225. Another court had ruled that in lieu damage may be awarded even if the infringer only made one dollar. *Blumcraft of Pittsburgh v. Newman Bros., Inc.*, 337 F.Supp. 859, 863 (S.D.Ohio 1971).

Defendants' selective prosecution defense is without merit. Upon cross-examination of Georgopolis, defendants raised the fact that J.C. Penney is and has been selling license plates with caricatures of "Garfield" and the "PEANUTS" characters which Georgopolis admitted were being sold without plaintiff's permission.

Defendants contend that plaintiff has singled them, small merchants, out for suit

while proceeding more slowly against a corporation as large as J.C. Penney. On the contrary, Georgopolis testified that upon defendants' information of infringements in September of this year, an investigator was sent to J.C. Penney. This investigator has discovered that the infringing plates were being sold by a concessionaire of J.C. Penney and plaintiff has proceeded to launch its standard attack. There is no evidence that plaintiff is not pursuing all known infringers with equal vigor. In fact, the evidence is unrefuted that it is doing just that.

The court finds on the basis of the foregoing facts and law that plaintiff is entitled to receive statutory damages in the amount of $50,000.00 for each of the copyright infringements, "Garfield" and "Odie", for a total of $100,000.00, from the defendants, jointly and severally. Such an award is necessary to deter continued flagrant infringement of plaintiff's copyrights.

### ATTORNEYS' FEES AND COSTS

Plaintiff has requested attorneys' fees in the amount of $19,000.00 as remuneration for defendants' violation of plaintiff's copyright. Section 505 of the Act permits this court in its discretion to award reasonable attorneys' fees. *Monogram Models, Inc.*, 492 F.2d at 1288. Plaintiff's exhibits demonstrate that plaintiff's Ohio counsel and its local Michigan counsel have expended numerous hours in pretrial preparation before and after the filing of this lawsuit. The *Russell* court stated that "the amount of work necessitated and performed and the skill employed" are to be considered in order to grant attorney fees. 612 F.2d at 1132. The skill of counsel merits the fee requested, in this community. Plaintiff's request for attorneys' fees is deemed reasonable under the circumstances and is granted.

Plaintiff's prayer for relief also includes costs representing payments for services rendered by George McVittie, an investigator. Section 505 of the Act allows this court in its discretion to award full costs. Plaintiff's request for $350.00 for the in-

vestigator, however, is denied. That was not a cost of litigation.

IT IS HEREBY ORDERED that plaintiff's request for statutory damages in the amount of $100,000.00 and for attorneys' fees in the amount of $19,000.00 is granted and plaintiff's request for the costs of investigation is denied.

IT IS FURTHER ORDERED that defendants are hereby enjoined from committing any further infringement of plaintiff's copyrights.

IT IS SO ORDERED.