FITZGERALD PUBLISHING CO., INC., Plaintiff-Appellant, Cross-Appellee,

v.

BAYLOR PUBLISHING CO., INC., Bill R. Baylor, World Color Press, Inc., and Baylor Publishing Co., and Community Enterprises, Inc., Defendants,

World Color Press, Inc., Defendant-Appellee, Cross-Appellant.

Nos. 37, 140, Dockets 86–7361, 86–7363.

United States Court of Appeals, Second Circuit.

Argued Aug. 25, 1986.

Decided Dec. 17, 1986.

R. Franklin Brown, New York City, for plaintiff-appellant, cross-appellee.

Edwin D. Akers, Jr., St. Louis, Mo. (Gallop, Johnson & Neuman, St. Louis, Mo., James A. Beldner, Seigel Sommers & Schwartz, New York City, of counsel), for defendant-appellee, cross-appellant.

Before FEINBERG, Chief Judge, CARDAMONE, Circuit Judge, and KELLEHER, District Judge.*

CARDAMONE, Circuit Judge:

This copyright infringement suit arises because a copyright owner and a printer each entered into a contract with Bill Baylor, a "con artist" who towed them both out to sea on a raft of unkept promises. Both deals soon foundered, precipitating the instant litigation. Although the district court found that both Baylor and the printer willfully infringed the owner's copyright, it erroneously refused to hold them jointly and severally liable for statutory damages. The trial court also incorrectly awarded actual damages on a theory appropriate for breach of contract, but not for copyright infringement. This appeal from a judgment entered April 4, 1986 in the United States District Court for the Eastern District of New York (Weinstein, C.J.) focuses on the issues of willful infringement and its consequences, and the standards that are to be applied in determining statutory and actual damages.

## I BACKGROUND

### A. Facts

Plaintiff, Fitzgerald Publishing Co., Inc., is the publisher and copyright holder of the *Golden Legacy Illustrated Magazine.* Bertram A. Fitzgerald is the corporation's sole stockholder. *Golden Legacy* treats the history of prominent Black people in a comic book format. Each *Golden Legacy* set includes 16 volumes. In September 1983, when the infringement at issue in this suit occurred, Fitzgerald Publishing had obtained copyrights for the set's first 11 volumes; the last five volumes were not copyrighted until February 1984.

Defendant, World Color Press, printed the *Golden Legacy* series for Fitzgerald from 1974 to 1980. A dispute over the quality of a printing job ended the relationship in 1980. When Fitzgerald refused to pay the approximately $8,000 printing bill from the disputed job, World Color retained possession of the plates from which *Golden Legacy* was printed. At that point, Bill Baylor contacted Bertram Fitzgerald in March 1982 proposing that Baylor's company, Unique People Advertising, Inc., furnish Fitzgerald with the necessary financing to reprint the *Golden Legacy* series in return for a portion of the profits from the sales. Fitzgerald wisely rejected this offer, but unfortunately remained in sporadic contact with Baylor throughout the remain-

---

* Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation.

der of 1982. For example, Baylor—this time as president of Baylor Publishing Co.—made another, substantially similar offer which Fitzgerald again alertly turned down.

Further importuning by Baylor resulted in a written contract dated January 28, 1983. Under its terms, Baylor Publishing agreed, in return for receiving approximately 100,000 sets, to provide the "finances, material, and labor" to reprint 142,-857 sets of *Golden Legacy*. For "authorizing the reprinting of Golden Legacy" Fitzgerald was to receive the remaining sets. Baylor also agreed to pay Fitzgerald's outstanding indebtedness to World Color. Several other matters regarding the contract are noteworthy. Most significant, no language in the agreement transferred Fitzgerald's *Golden Legacy* copyright to Baylor. Further, the reprinting of *Golden Legacy* was to begin by March 28, 1983 and Baylor obtained a reprint option for which Fitzgerald was paid $3,000—$2,000 on the date of the contract and a promissory note for the balance.

The deal began to unravel quickly. Baylor's failure to pay the installments on the note or to provide the promised financing for the reprinting prompted Fitzgerald to call him in April 1984 and terminate their arrangement. Although the Baylor-Fitzgerald contract contemplated that World Color would do the reprinting, Fitzgerald did not contact World Color after either forming or ending his agreement with Baylor.

Fitzgerald's termination of their agreement did not faze Baylor, who proceeded in a "deceptive" manner to make full use of it. Armed with his copy of the contract—which he had shown to a World Color account executive in February 1983—he undertook to arrange with World Color for it to reprint the *Golden Legacy* series. On March 17, Baylor boldly directed World Color to change the copyright notice on the *Golden Legacy* plates. World Color did not receive a copy of the Baylor-Fitzgerald contract until March 22, and had neglected to submit it to counsel for review prior to

changing the copyright notice. Although some preparatory work had been done in mid-March, *Golden Legacy* was not printed until September 1983 because of Baylor's inability to obtain sufficient financing.

Fitzgerald learned of *Golden Legacy*'s republication with the changed copyright in January 1984. The individual volumes in the reprinted series were unchanged from those Fitzgerald had previously published with several minor exceptions. Fitzgerald immediately contacted World Color, informing it that he had not authorized the change in the copyright notice.

### B. Proceedings Below

On June 7, 1984 Fitzgerald sued World Color and Baylor. The complaint asserted copyright infringement and unfair competition claims against both defendants, adding a breach of contract and fraud claim against Baylor and a negligence cause of action against World Color. The copyright infringement claims were based on the 1976 Copyright Act. 17 U.S.C. § 101 *et seq.* (1982). The other claims were founded on state law. World Color's answer raised various legal and equitable defenses as well as asserting a cross-claim against Baylor based on the March 14, 1983 Baylor-World Color contract. Baylor defaulted.

Following Baylor's default, the district court referred the claims against him to a magistrate who found that he had willfully infringed Fitzgerald's copyrights for the first 11 volumes of *Golden Legacy*. In determining that Baylor was liable for the maximum amount of statutory damages, the magistrate relied on Baylor's "deceptive conduct" in arranging for the reprinting of the series. The magistrate rejected Fitzgerald's claim for actual damages for volumes 12 through 16 because Fitzgerald submitted an erroneous contractual theory of damages. But the magistrate did find that Fitzgerald had shown that Baylor had made $866.50 in profits as a result of the infringement. With respect to the other causes of action against Baylor, the magistrate concluded that the unfair competition claim was preempted by federal law, that insufficient documentation existed from

which to determine the amount of damages for the breach of contract claim, and that Fitzgerald was entitled to nominal—but not punitive—damages on the fraud claim. Fitzgerald's request for attorney's fees was deferred pending adequate documentation of its expenses.

A two-day bench trial on Fitzgerald's claims against World Color was held in district court before Chief Judge Weinstein in February 1986. At its conclusion, the district court announced its findings of fact and conclusions of law from the bench and incorporated these determinations in its judgment dated April 4, 1986. The district court adopted, with only a minor change, the magistrate's report with respect to Baylor. Regarding Fitzgerald's claims against World Color, it held that World Color had willfully infringed Fitzgerald's copyrights and awarded Fitzgerald $22,000 in statutory damages for the infringement of the copyrights of volumes one to eleven. In making this determination, the district court considered the following factors: World Color's financial loss as a result of its dealings with Baylor, Fitzgerald's inability to reprint *Golden Legacy* itself, the absence of any need for deterrence, and the relative value of the copyright. Regarding actual damages for infringement of the copyrights for volumes 12 through 16, the trial court awarded Fitzgerald $27,948.14, the value of the total number of volumes that it was to receive from the reprinting of *Golden Legacy*. The district court also awarded Fitzgerald $12,500 in attorney's fees as well as certain injunctive relief. It refused to make World Color jointly and severally liable for the payment of the statutory damages awarded Fitzgerald for Baylor's infringement of the copyrights for volumes one to eleven.

Thus, the damages awarded Fitzgerald against Baylor were statutory damages of $550,000 and actual damages of $886.50; against World Color the awards were statutory damages of $22,000, actual damages of $27,948.14 and $12,500 in attorney's fees. Fitzgerald appeals the refusal to hold World Color and Baylor jointly and severally liable for the awards of statutory

damages. World Color cross-appeals the findings that it both infringed and willfully infringed Fitzgerald's copyrights, and the award of attorney's fees. Both World Color and Fitzgerald appeal the award of actual damages for World Color's infringement of the copyrights for volumes 12 through 16.

We begin by considering World Color's challenge to its liability for infringement. Next, we will examine the appropriate measure of statutory and actual damages.

## II  INFRINGEMENT

Section 501(a) of the Act proscribes any unauthorized copying of works of the copyright owner. 17 U.S.C. § 501(a) (incorporating by reference 17 U.S.C. § 106). World Color admits using Fitzgerald's plates in reprinting *Golden Legacy*. World Color also admits that it reprinted *Golden Legacy* bearing Baylor's new copyright at his direction. This alone would make World Color liable for infringing Fitzgerald's copyrights, absent authorization or an equitable bar to this action. World Color raises both defenses.

### A.  *Authorization*

World Color argues that it relied justifiably on the Baylor-Fitzgerald contract and, that the terms of that contract authorized the replacement of Fitzgerald's copyright notice with Baylor's. But reliance—justified or otherwise—is irrelevant in determining whether World Color infringed Fitzgerald's copyrights. Even an innocent infringer is liable for infringement. Under § 501(a) intent or knowledge is not an element of infringement. *Samet & Wells, Inc. v. Shalom Toy Co.*, 429 F.Supp. 895, 904 (E.D.N.Y.1977), *aff'd*, 578 F.2d 1369 (2d Cir.1978); *see also Costello Publishing Co. v. Rotelle*, 670 F.2d 1035, 1044 (D.C.Cir.1981). Innocence is only significant to a trial court when it fixes statutory damages, which is a remedy equitable in nature. *Tempo Music, Inc. v. Myers*, 407 F.2d 503, 507 & n. 8 (4th Cir.1969). Thus, World Color's claim that it innocently

reprinted *Golden Legacy* is of no assistance to it.

We consider next whether the Baylor-Fitzgerald contract gave Baylor the right to change the copyright notice. While the contract gave Baylor broad rights, it did not authorize him to change the copyright notices. Although in some respects the contract is unclear, it is obvious that the contract contains no language touching on either the assignment of Fitzgerald's copyrights or the granting of a license that would include the right to change those copyrights. Wholly apart from the absence of any language giving Baylor the right to alter the copyrights, other language in the agreement affirmatively indicates that Baylor was not intended to receive such authority. For example, the contract enumerates what Fitzgerald is to receive for *its* authorization of the reprinting. Additionally, Baylor was given a 36-month option to reprint *Golden Legacy*, which would be unnecessary if Baylor held copyrights to the series. *See 2 M. Nimmer, Nimmer on Copyright,* § 8.02[A] (1986) (copyright ownership includes the right of reproduction). Thus, World Color's claim that the Baylor-Fitzgerald contract authorized a change in the copyright does not help it either.

### B. *Equitable Bar*

█ We turn to World Color's claim of an equitable bar. World Color relies on three factors in support of this contention. First, it cites the district court's statement that it could have denied Fitzgerald relief on the basis of unclean hands. Next, World Color points to Fitzgerald's failure to notify it of Baylor's breach. Finally, World Color asserts that Fitzgerald was at fault in allowing Baylor to use the broadly-worded Baylor-Fitzgerald contract in Baylor's dealings with World Color.

These arguments simply miss the mark. It is true that the district court stated that it could have denied Fitzgerald relief on the basis of unclean hands. But it did not. World Color has failed to address why the district court's *refusal* to deny relief on that ground is an abuse of discretion. *See*

*A.H. Emery Co. v. Marcan Products Corp.,* 389 F.2d 11, 17 (2d Cir.), *cert. denied,* 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968) (even where record would have supported a contrary determination, no abuse of discretion in declining to find bar because of unclean hands). Again, we are unpersuaded that Fitzgerald should be estopped simply because it did not notify World Color that Baylor had breached his contract. World Color has shown no legal duty Fitzgerald owed it. Nor should an equitable duty be imposed on Fitzgerald, absent evidence that Fitzgerald knew of Baylor's conduct. Moreover, World Color should not have been misled by the Baylor-Fitzgerald contract. The contract, as noted, did not assign the copyright or grant Baylor a license. Thus, reliance on the contract as authority to make the changes was unreasonable, especially given that an experienced printer like World Color failed to obtain legal advice concerning the contract before doing business with Baylor.

### III STATUTORY DAMAGES

In general, the copyright owner is entitled to recover the actual damages he suffered and any profits made by the infringer. 17 U.S.C. § 504(b). The owner may elect to recover—instead of actual damages and profits—statutory damages under § 504(c)(1) for those works whose copyrights were registered at the time the infringement occurred. In this instance, Fitzgerald elected to recover statutory damages for volumes one through eleven of *Golden Legacy.* These were the only volumes in the series for which Fitzgerald had registered the copyrights before the infringements occurred. Further, if a court finds that the infringement was committed willfully, it has discretion to enhance the award of statutory damages up to a sum of $50,000 for each infringement. § 504(c)(2). Thus, we first consider the issue of willful infringement.

### A. *Willful Infringement*

█ World Color maintains that its conduct cannot be willful as a matter of law because the district court found that it had

a right to reprint *Golden Legacy* and did not maliciously intend to change Fitzgerald's copyright notices. This contention may be disposed of quickly. First, a court need not find that an infringer acted maliciously to find willful infringement. *See Fallaci v. New Gazette Literary Corp.,* 568 F.Supp. 1172, 1173 (S.D.N.Y.1983); 3 *Nimmer* § 14.04[B][3] at 14–28. Second, whether World Color had the right to reprint *Golden Legacy* is not dispositive. The pertinent point is whether it had the right to reprint with the copyright notices changed. As just discussed, the Baylor-Fitzgerald contract, upon which World Color relied, did not give Baylor—and by extension, World Color—the right to change the notices.

Even in dismissing these arguments, the question remains as to what qualifies as "willfulness" for purposes of § 504(c)(2) of the Act. More specifically, given that World Color knew—as its own internal memoranda revealed—or should have known—as an experienced printing concern—that Baylor lacked the authority to change the notice, did it willfully infringe upon Fitzgerald's copyrights?

We have not had occasion to consider this question. One commentator has concluded that "willfully" means with knowledge that defendant's conduct represents an infringement. *See 3 Nimmer* § 14.-04[B][3] at 14–28. Defining knowledge, several district courts have held that something less than proof of actual knowledge will suffice to establish knowledge and, hence, willfulness. For example, one court found a willful infringement based upon the infringer's position—itself a publisher of a copyrighted newspaper—and its failure to appear and defend in the copyright action. *Fallaci,* 568 F.Supp. at 1173. Another court held that "reckless disregard" for the copyright holder's rights establishes knowledge of the infringement. *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F.Supp. 730, 733 (S.D.N.Y.1981).

■ We agree that a defendant's knowledge that its actions constitute an infringement establishes that the defendant acted willfully within the meaning of § 504(c)(2) for purposes of enhancing statutory damages. Other language in § 504(c)(2) supports this conclusion. Congress there provided for a reduction in the minimum level of statutory damages should the defendant establish that it neither knew, nor had reason to know, that its conduct represented an infringement. *Id.* In other words, a defendant can claim the defense of "innocent intent" to reduce the amount of statutory damages. It is plain that "willfully" infringing and "innocent intent" are not the converse of one another. Thus, it is possible in the same action for a plaintiff not to be able to prove a defendant's willfulness, and, at the same time, for the defendant to be unable to show that it acted innocently. But in indicating what conduct will reduce the penalty, the statutory language also suggests what conduct should increase the penalty. Thus, just as the lack of actual or constructive knowledge will establish an innocent intent, so a defendant's actual or constructive knowledge proves willfulness.

■ The district court implicitly used this standard in determining that World Color Press acted willfully in infringing Fitzgerald's copyright. Reviewing this finding on the clearly erroneous standard, Fed.R.Civ.P. 52(a), we are convinced that the district court correctly concluded that World Color willfully infringed Fitzgerald's copyright. Two internal memoranda circulated by World Color acknowledged that all Baylor had received from Fitzgerald was the right to reprint *Golden Legacy.* The instructions from Baylor received by World Color on March 17th contained no indication that Baylor had obtained greater rights in *Golden Legacy.* Moreover, World Color had a copy of the Baylor-Fitzgerald contract on March 22, which we may assume it read, and—as an experienced publisher must have realized—that it contained no authorization to change the copyright notice.

## B. *Joint and Several Liability for Statutory Damages*

■ Yet, relying exclusively on *Sammons v. Colonial Press, Inc.*, 126 F.2d 341 (1st Cir.1942), the district court refused to make World Color jointly and severally liable with Baylor for the award of statutory damages for the infringements of volumes one through eleven of *Golden Legacy* despite its willful infringement. Such reliance was not well-founded as *Sammons* concluded that there was several liability only for *profits* received individually by each infringer, *id.* at 344–46, but held that for *damages* liability was joint and several, citing "familiar principles of tort liability." *Id.* at 345.

World Color vigorously defends the district court's decision, relying on *Hospital for Sick Children v. Melody Fare Dinner Theatre*, 516 F.Supp. 67 (E.D.Va.1980). In *Melody Fare*, a basic award of statutory damages was made against two defendants for which both were liable jointly and severally. *Id.* at 72. In addition, the court increased the award against one defendant, but did not make this incremental award joint and several. *Id.* at 72–73. *Melody Fare* is inapposite to the instant case. There the court found that only one of the two defendants willfully infringed the plaintiff's copyright. Here, in contrast, the district court found that both Baylor and World Color willfully infringed Fitzgerald's copyrights. One other possible suggestion for maintaining the several awards is that the defendants committed separate infringements. But in a case decided recently that is indistinguishable from the present one, *Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467 (2d Cir.1985), we held the printer-defendant was jointly *and* severally liable for actual damages with a distributor for producing a poster infringing on the plaintiff's copyright. *Id.* at 472.

In refusing to hold Baylor and World Color jointly liable, the district court ignored the explicit language of that section of the Copyright Act concerned with statutory damages: "[T]he copyright owner may elect ... an award of statutory damages for all infringements involved in an action, with respect to any one work ... for which any two or more infringers are liable jointly and severally...." § 504(c)(1). It also disregarded this Circuit's precedents imposing joint and several liability for copyright infringements. *See Abeshouse*, 754 F.2d at 472; *MCA, Inc. v. Wilson*, 677 F.2d 180 (2d Cir.1981). Here the infringement flowed from Baylor's and World Color's joint action in reprinting the first 11 volumes of *Golden Legacy*. As a consequence, their liability is necessarily joint and several. The statutory language and our precedents both require reversal of the district court's determination that Baylor and World Color are only severally—but not jointly—liable for Fitzgerald's statutory damages, since that conclusion was a plain error of law.

## C. *Award of Statutory Damages*

In deciding that World Color and Baylor are jointly and severally liable for statutory damages, we decline to adopt the $550,000 statutory damage award made against Baylor. Instead we remand this case for reconsideration of the award. This result is compelled by the wide discretion the Copyright Act affords the trial court in setting the amount of statutory damages. 17 U.S.C. § 504(c)(1) and (2); *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir.1984); *Blendingwell Music, Inc. v. Moor-Law, Inc.*, 612 F.Supp. 474, 485 (D.Del.1985); *United Features Syndicate, Inc. v. Spree, Inc.*, 600 F.Supp. 1242, 1246 (E.D.Mich.1984), *appeal dismissed*, 779 F.2d 53 (6th Cir.1985); *RSO Records, Inc. v. Peri*, 596 F.Supp. 849, 862 (S.D.N.Y. 1984); *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908, 914 (D.Conn.1980).

Under § 504(c)(1) an award of statutory damages may be made from $250 up to $10,000 "as the court considers just." In cases where the court finds, as here, that the infringement was committed willfully, the award may be increased to a sum of

$50,000 for each infringement. § 504(c)(2). It might be thought difficult to set a single award of statutory damages when the determination involves two defendants, one of which might be more blameworthy than the other. Here, for instance, the district court believed that as between the two defendants, Baylor was the more culpable. Yet, such potential problems are largely chimerical.

Most of the factors relied upon in deciding upon the appropriate statutory damages award do not depend on the trial court's weighing the blameworthiness of one defendant against another. For example, the expenses saved and the profits reaped by the infringers are considered. *Rare Blue Music, Inc. v. Guttadauro*, 616 F.Supp. 1528, 1530 (D.Mass.1985); *Milene Music, Inc. v. Gotauco*, 551 F.Supp. 1288, 1296 (D.R.I.1982). Other factors—not dependent on a particular defendant's culpability—are also examined, including the revenues lost by the plaintiff, *Boz Scaggs Music*, 491 F.Supp. at 914, the value of the copyright, *see, e.g., Spree*, 600 F.Supp. at 1246, and the deterrent effect on others besides the defendant. *United Feature Syndicate, Inc. v. Sunrise Mold Co.*, 569 F.Supp. 1475, 1481 (S.D.Fla.1983).

Some factors do focus upon an individual defendant's culpability, for instance, whether the defendant's conduct was innocent or willful, *Blendingwell Music*, 612 F.Supp. at 486, or whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced. *Peri*, 596 F.Supp. at 862. Finally, the potential for discouraging the defendant is factored into the determination of the award. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952); *Sunrise Mold Co.*, 569 F.Supp. at 1481.

Consideration of these factors in setting the statutory damage award sometimes results—on account of their several and joint liability—in a less culpable defendant being held liable in an amount greater than otherwise would be the case had it appeared in the action alone. This possibility is not a fatal obstacle. Awards of statutory damages serve two purposes—compensatory and punitive. *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 592 F.2d 651, 657 (2d Cir.1978). To the extent that an award of statutory damages compensates the plaintiff for its injury, the relative faults of the defendants are irrelevant.

As to that part of the award that is punitive in nature, the less culpable defendant will have a recovery over against the more culpable defendant in most instances. Moreover, § 504(c) provides two opportunities for a defendant to escape the full measure of joint and several liability with a more culpable defendant. It can establish that it was an innocent infringer under § 504(c)(2), or it may successfully oppose the plaintiff's contention that it willfully infringed plaintiff's copyright. Nevertheless, when the copyright owner has successfully established that two or more defendants were willful infringers, § 504(c)(2) is unconcerned about gradations in blameworthiness. The statute does not distinguish between those who maliciously infringe another's copyright or those who simply act knowing that they are infringing upon the copyright.

Given the extensive discussion above, we add only a few words concerning the application of these principles to the present case. Although we do not presume to encroach upon the district court's discretion in setting the appropriate damage award, we expect that under the circumstances the award will be higher than the figure originally assessed against World Color alone.

## IV ACTUAL DAMAGES

The district court awarded Fitzgerald $27,948.14 in actual damages for the infringements of the copyrights of volumes twelve through sixteen of *Golden Legacy*. The actual damages awarded were based essentially upon a contractual measure of

damages, that is to say, they purported to put Fitzgerald in as good a position as it would have been had Baylor performed the contract. They effectively awarded Fitzgerald the value of the percentage of the *Golden Legacy* that it was due under the contract for those volumes of the series that were actually printed. Both parties contend, and we agree, that this award was a plain error of law.

■ Section 504(b) of the Act provides that "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." Although the Act itself does not define what constitutes actual damages, the primary measure of recovery is the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement. *See* 3 *Nimmer* § 14.02 at 14–6. Failure to apply this measure in weighing actual damages requires reversal.

In remanding this case for reconsideration of the actual damage award, we adopt neither damage figure proffered by the parties. World Color does not believe that it owes Fitzgerald any actual damages because it made no profit from reprinting *Golden Legacy*. But actual damages are not so narrowly focused. If World Color had made a profit, such would be added to the actual damages Fitzgerald may be able to prove. The fact that the infringer made no profit is hardly a reason to deny plaintiff its actual damages for copyright infringement. The House Report accompanying the Copyright Act of 1976 explained that the Act provided for *damages* to compensate the copyright owner for losses suffered as a result of the infringement, and also allowed for the award of the *profits* of the infringer to prevent the infringer from unfairly benefiting from its wrongful act. H.R.Rep. No. 1476, 94th Cong., 2d Sess.

161, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5659, 5777. Thus, Congress made clear that the two subjects—profits and damages—are entirely separate.

Fitzgerald argues that it is entitled to damages based on the gross revenues from the sales of the *Golden Legacy* sets that Baylor presumably made after receiving the copies from World Color. This proposition is also flawed. Fitzgerald's claim is implicitly grounded on *Peri* where the district court indicated that it was prepared to award actual damages based on the expected profits from the sales of infringing material for which the defendants could not account. *See* 596 F.Supp. at 860–61. *Peri* should not be read so broadly. That case dealt with infringing counterfeits that were directly competing with copyrighted material. Hence, the *Peri* court believed that it could ascertain what the plaintiff's profits would have been, based upon the defendant's projected profits. Given that the total sales volume would not have increased, every sale gained by the defendant was a sale lost by the plaintiff. In the present case, Fitzgerald did not directly compete with the infringing copies of *Golden Legacy* because it never received any copies of the reprints. Further, Fitzgerald produced no evidence indicating that it had begun to market *Golden Legacy*—by contacting distributors or other potential customers. The facts in *Peri* additionally supported the inference that the defendants had succeeded in selling all the infringing copies. The evidence in the present case does not support that inference.

Because the proper measure of damages is often difficult to ascertain, *see* 3 *Nimmer* § 14.02 at 14–7, indirect evidence may be used to fix the amount of the damages. One example is the profits which the plaintiff might have earned were it not for the defendant's infringement. *Kenbrooke Fabrics, Inc. v. Holland Fabrics, Inc.*, 602 F.Supp. 151, 155 (S.D.N.Y.1984). Further, the copyright owner is competent to testify as to the extent to which the copyright's

value has been injured or destroyed by defendant's actions. *Runge v. Lee,* 441 F.2d 579, 582 (9th Cir.), *cert. denied,* 404 U.S. 887, 92 S.Ct. 197, 30 L.Ed.2d 169 (1971).

In remanding for a reconsideration of the actual damages, we recognize that the magistrate declined to receive into evidence plaintiff's past sales and its marketing strategy because it believed that such was insufficient proof of damages to support Fitzgerald's breach of contract claim against Baylor. It did find on the copyright claim that Baylor made a profit of $866.50. It is not clear from the magistrate's report how recently the sales of *Golden Legacy* that Fitzgerald cited were made. *See Big Seven Music Corp. v. Lennon,* 554 F.2d 504, 509–11 (2d Cir.1977) (discussing evidence of past sales). On remand, plaintiff should not be limited to adducing evidence of past sales. Instead, it can present any relevant evidence bearing on the question of how much the value of the copyrights for volumes 12 through 16 has been injured in order to prove its damages.

## V ATTORNEY'S FEES

While we find no abuse of the district court's discretion in awarding attorney's fees, *see Oboler v. Goldin,* 714 F.2d 211, 213 (2d Cir.1983) (per curiam), this determination must nevertheless be vacated. One of the *Oboler* factors, considered by the district court, is the amount of damages awarded. *Id.* at 213. Because our view on the issues will affect the amount of overall damages, an appropriate award of attorney's fees should be deferred until the district court has an opportunity to reconsider the damages issues. On remand, plaintiff's counsel should furnish the court with contemporaneous time records detailing the hours spent litigating the action against World Color. *See Lewis v. Coughlin,* 801 F.2d 570, 577 (2d Cir.1986). The award of attorney's fees is, of course, only appropriate for volumes one through eleven.

## VI CONCLUSION

The judgment appealed from is reversed and the case remanded for a reconsideration of the proper award of statutory damages for Fitzgerald's *Golden Legacy* volumes one through eleven for which World Color is jointly and severally liable with Baylor, and for a redetermination of the actual damages for the infringements of the copyrights owner's volumes 12 through 16. The award of attorney's fees is vacated, to be reconsidered upon a determination of the damage award. The district court's finding that World Color willfully infringed Fitzgerald's copyright raised in the cross-appeal is affirmed.

Reversed and remanded.

Cross-appeal affirmed.