CASS COUNTY MUSIC COMPANY, Red Cloud Music Company, Cross Keys Publishing Co., Inc., Seventh Son Music, Mattie Ruth Musick, EMI April Music Inc., Getarealjob Music, New Don Songs, New Hayes Music, Kal Mann, Jerry Leiber Music and Mike Stoller Music, Plaintiffs,

v.

Sayed KHALIFA d/b/a Echo Lake Park, Defendant.

No. 94–CV–1517.

United States District Court, N.D. New York.

Feb. 2, 1996.

Hancock & Estabrook, LLP, Syracuse, New York (David E. Peebles, of counsel), for Plaintiffs.

Sayed Khalifa, Echo Lake Park, Afton, New York, Defendant Pro Se.

**MEMORANDUM, DECISION & ORDER**

McAVOY, Chief Judge.

Plaintiffs brought suit against defendant for five copyright infringements, seeking injunctive relief, statutory damages, and costs, including attorney's fees. The Court earlier denied defendant's motion for a jury trial. Now, the Court must resolve plaintiff's motion for summary judgment.

## I. Background

Plaintiffs are all members of the American Society of Composers, Authors, and Publishers ("ASCAP"), to which they have granted non-exclusive rights to license non-dramatic public performances of their copyrighted musical compositions. (Hoynes Aff. ¶ 2.) On behalf of plaintiffs and 65,000 other members, ASCAP licenses thousands of radio and television networks and stations, restaurants, nightclubs, hotels, taverns and other establishments to perform lawfully copyrighted musical compositions in the ASCAP repertory. (*Id.*)

Pursuant to a long-standing oral agreement with an officer of the Amany Corporation ("Amany"), Amany pays defendant roughly $5000 to manage and operate Echo Lake Park ("ELP"), a 136–acre campground in Afton, New York, during the summer season. (D's Dep. at 13–19). Amany owns ELP and the land on which it is situated. (*Id.* at 13–14.) At all times relevant to this action, defendant was neither an officer, director, nor shareholder of Amany. (*Id.* at 15.) Located on the ELP grounds is a recreation hall, which includes a bar and restaurant area. (*Id.* at 19–20.) During the summer, entertainers perform in the bar area roughly one night per week, usually for paying members of the public. (*Id.* at 23, 25.)

Plaintiffs allege that as part of the entertainment defendant provides at ELP, defendant knowingly and intentionally violated plaintiffs' rights by publicly performing copyrighted songs without a license agreement from plaintiffs or ASCAP. They also contend that despite their having sent numerous letters to defendant and undertaken numerous visits to ELP for the purpose of informing defendant of his liability under copyright

law, he has continued to perform the copyrighted music to members of the public without permission. Specifically, plaintiffs allege that the following songs were performed in ELP's recreation hall on July 23, 1994, without authorization from plaintiffs or ASCAP: "Tequila Sunrise," "Chattahoochie," "I Feel Lucky," "Let's Twist Again," and "Jailhouse Rock," all of whose copyrights plaintiffs allegedly own. Plaintiffs request an order permanently enjoining defendant from performing these compositions publicly. They also seek statutory damages of $2000 for each of defendant's five alleged infringements and costs, including a reasonable attorney's fee.

Defendant admits that ASCAP representatives sent him a number of letters and visited ELP to inform him that he must purchase a license in order to perform copyrighted music. He asserts that he asked each ASCAP representative, including plaintiffs' attorney, to furnish him with proof that defendant, rather than the bands who perform songs in the recreation hall, would be liable for any copyright violations stemming from public performances at ELP. Apparently, none of the ASCAP representatives provided him with this information.

According to defendant, on July 23, 1994, he rented ELP's recreation hall to one "Bodie" for the sum of $100. (*Id.* at 27–28.) "Bodie" apparently hired a band called "Eva Perez & The Union Railroad" ("Perez") to perform in the recreation hall that night, "on a trial basis to be hired on the following weekend for a community picnic." (*Id.* at 27; D's Reply, at 1). Defendant testified at his deposition that he had no agreement with Perez, did not pay Perez to perform, and did not ask Perez herself or any members of her band whether they had permission from copyright owners to perform any copyrighted musical compositions. (D's Dep. at 27, 30). He does not deny that Perez performed the five above-mentioned songs in ELP's recreation hall that evening, but claims that he neither controlled nor attended the performance. (D's Reply, at 1; D's Dep. at 26–27.) Reasoning that since he did not personally perform the songs in question, he cannot incur liability for copyright infringement, defendant argues that if anyone had a responsibility to obtain licenses, Perez did. Neither "Bodie," Perez, nor Amany is a party to this action.

## II. Discussion

### A. Summary Judgment Standard

Under Fed.R.Civ.Pro. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand,* 807 F.2d 44 (3d Cir.1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985), *cert. denied* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

Summary judgment is available in suits brought by copyright owners for copyright infringement. *See, e.g., Associated Music Publishers, Inc. v. Debs Memorial Radio Fund,* 141 F.2d 852 (2d Cir.1944) (infringement via unauthorized public broadcast), *cert. denied,* 323 U.S. 766, 65 S.Ct. 120, 89 L.Ed. 613 (1944); *Milene Music, Inc. v. Gotauco,* 551 F.Supp. 1288 (D.R.I.1982) (infringement via unauthorized public performance). To obtain summary judgment against an alleged infringer, a copyright owner must establish the following elements with respect to each allegedly infringed work: (1) originality and authorship of the compositions involved; (2) compliance with the formalities of the Copyright Act (the "Act"); (3) plaintiffs' ownership of the copyrights involved; (4) public performance; and (5) defendant's lack of authorization from any plaintiff or plaintiff's representative to perform the compositions publicly. *Broadcast Music, Inc. v. Sonny Inv. Assocs.,* 865 F.Supp. 110, 113–14 (W.D.N.Y.1994); *see*

*also Broadcast Music, Inc. v. 315 W. 44th St. Rest. Corp.,* 1995 WL 408399, at *2 (S.D.N.Y. July 11, 1995); *Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908, 912 (D.Conn.1980).

### B. Copyright Act

Section 106(4) of the Act grants copyright owners the exclusive right to perform their copyrighted musical works publicly and to authorize such performances. Under § 501(a), anyone who violates a copyright owner's exclusive rights is an infringer. Although the Act nowhere defines the extent to which non-performers of copyrighted works may expose themselves to infringement liability, a long line of Second Circuit cases authorizes the imposition of vicarious liability upon those who "have the right and ability to supervise the infringing activity and also ha[ve] a direct financial interest in such activities." *Gershwin Pub. Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971). Finally, §§ 504–05 describe the civil remedies available to copyright owners who sue infringers under the Act for violating the owners' exclusive rights.

### C. Analysis

#### 1. Liability

■ The following facts are not in dispute: that plaintiffs own valid copyrights in the five songs at issue;[1] that defendant manages and operates a facility where those songs were performed for the public; and that defendant did not have authorization from any plaintiff or plaintiff's representative for the performances. Hence, the key question for the Court to decide is whether defendant has raised a genuine issue of material fact as to whether he, as the manager and operator of the facility where copyrighted songs were publicly performed without a license, is vicariously liable for copyright infringement. If defendant has failed to raise a genuine issue

of material fact with respect to this issue, then the Court must also consider whether summary judgment is appropriate as to plaintiffs' requested relief.

Defendant admits that he rented ELP's recreation hall to "Bodie" on July 23, 1994, (D's Dep., at 27), but argues that far from performing the copyrighted songs himself, as plaintiffs seem to allege and argue, he neither authorized nor attended Perez's infringing performances. In other words, defendant *pro se* raises the issue of whether the manager of an entertainment facility who rents out the facility for musical performances is vicariously liable for any copyright infringements that may occur there.[2] Although plaintiffs neglected to address this issue, the law is clear that defendant may be held vicariously liable under the Act for Perez's copyright infringements.

As the manager of ELP and the person who rents out its recreation hall for musical performances, defendant has "the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Gershwin,* 443 F.2d at 1162; *see also Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir.1963). Although defendant failed to supervise the recreation hall performance on July 23, 1994, he does not argue, and there is no evidence to suggest, that he lacked the right to do so. To the contrary, as the manager of ELP and the person who rented out its recreation hall, defendant clearly had the right to supervise the activities conducted there. Furthermore, defendant had a direct financial interest in recreation hall activities such as live band performances because they generate rental income, admission fees, and revenues from sales of food and beverages for ELP (*see, e.g.,* P's Dep. at 29). Evidence that someone other than defendant hired Perez to perform has no bearing on his liability. *Gershwin,*

---

**1.** Defendant does not contest plaintiffs' copyright registrations, which provide *prima facie* evidence of the validity of plaintiffs' copyrights. *Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 763 (2d Cir.1991).

**2.** Apparently unmindful of his duties towards defendant and the Court in light of defendant's *pro se* status, counsel failed to address the vicarious liability issue in the complaint or memorandum

of law. Even though defendant's argument is ultimately unpersuasive, counsel's failure to address this meritorious defense casts a shadow over plaintiffs' claims and forces the Court to undertake research that the parties are normally expected to perform. Counsel's conduct will affect his request for attorney's fees. *See supra* at 13–14.

443 F.2d at 1162; *Shapiro,* 316 F.2d at 307. Nor does defendant's professed ignorance of Perez's infringing performances. *Shapiro,* 316 F.2d at 307; *D.C. Comics Inc. v. Mini Gift Shop,* 912 F.2d 29 (2d Cir.1990) (noting that finding of innocent infringement does not absolve defendant of liability). Defendant has failed to raise a genuine issue with respect to the material facts that plaintiffs own valid copyrights in the five songs, that on July 23, 1994, he rented a recreation hall located on ELP's premises to "Bodie," that in the recreation hall that evening, Perez performed plaintiffs' five songs publicly; that defendant lacks authorization from plaintiffs or ASCAP to permit bands to play copyrighted songs in the recreation hall, and that defendant had the right and the ability to supervise the infringing activity and a direct financial interest in it. Thus, under the Act, defendant incurred vicarious liability for Perez's infringing performances of the five copyrighted songs.

### 2. Damages

Having determined defendant's liability under the Copyright Act, the Court turns to consider plaintiffs' requested remedies. Plaintiff seeks the three main remedies the Copyright Act provides for copyright owners whose exclusive rights have been infringed: injunctive relief, monetary damages, and costs and attorney's fees. The Court will consider each request in turn.

### a. Injunctive Relief

■ Section 502(a) of the Act permits the Court to order a temporary or permanent injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." Because injunctions are extraordinary remedies, courts only grant them in copyright cases when plaintiffs prove the possibility or threat of continuing or additional infringements. *Dolori Fabrics, Inc. v. Limited, Inc.,* 662 F.Supp. 1347, 1358 (S.D.N.Y.1987); *see also Milene,* 551 F.Supp. at 1295 (stating that injunctive relief is appropriate when a substantial likelihood of further infringement exists). In this case, three facts suggest that a permanent injunction is necessary to curb a substantial threat of future copyright infringements at ELP. First, defendant admits that he ignored AS-CAP's numerous demands that he secure appropriate authorization for public performances of copyrighted songs at ELP. Second, defendant "is engaged mostly in renting the [ELP] facilities to individuals, groups, bands, students, and religious organization." (P's Reply, at 1.) This indicates that Perez was one of an on-going series of bands who perform musical compositions at ELP, rather than an isolated engagement. Finally, defendant's papers reveal his apparently lax attitude towards ensuring that ELP bands perform copyrighted songs only in compliance with the Act. These facts amply justify the imposition of a permanent injunction.

### b. Monetary Damages

■ Plaintiffs seek to recover from defendant statutory damages of $2,000 for each of the five copyright infringements discussed above. At the Court's discretion, statutory damages may range from $500 to $20,000 for each copyright infringement. 17 U.S.C. § 504(c)(1). If the copyright owner sustains the burden of proving, and the Court finds, that defendant infringed the owner's copyright willfully, the Court may increase the award of statutory damages to not more than $100,000 per infringement. *Id.* § 504(c)(2). On the other hand, if the infringer sustains the burden of proving, and the Court finds, that the infringer "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright," then the Court may reduce the statutory damages award to not less than $200 per infringement. *Id.*

■ Because awards of statutory damages serve both compensatory and punitive purposes, the Court considers a number of factors in addition to the defendant's degree of culpability when setting the award. *Fitzgerald Publishing Co. v. Baylor Publishing Co.,* 807 F.2d 1110, 1117 (2d Cir.1986); *see also F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952). The compensatory nature of the award leads the Court to consider, for example, how much money the defendant saved or profited by failing to secure a license, plaintiff's lost revenues, the value of the copyright, and the likely deter-

rent effect of the award on others besides defendant. *Fitzgerald*, 807 F.2d at 1117. To the extent that the award is punitive in nature, the Court considers whether the defendant's infringing conduct was willful or innocent and the potential deterrent effect of the award on defendant. *Id.*

Plaintiffs claim that had defendant held an ASCAP license for ELP continuously from 1987 through August 31, 1995, he would have incurred license fees totalling $3,861.84. (Hoynes Aff. ¶ 11.) This statement is of dubious relevance to the question of how much money defendant saved and plaintiffs lost due to defendant's failure to secure a license for the summer of 1994, when the litigated copyright violations occurred. Assuming the truth of plaintiffs' statement concerning licensing fees and assuming that AS-CAP licensees can obtain seasonal licenses, the Court estimates that defendant or Amany would have had to pay $430 to obtain the appropriate license for the summer of 1994. Of course, a copyright infringer "cannot expect to pay the same price in damages as it might have paid after freely negotiated bargaining, or there would be no reason scrupulously to obey the copyright law." *Iowa State Univ. Research Found., Inc. v. ABC, Inc.*, 475 F.Supp. 78, 83 (S.D.N.Y.1979). Neither side has submitted evidence regarding the value of the five copyrights at issue. The Court will consider, however, the likely deterrent effect of a damages award on others besides defendant.

On the issue of whether the infringement was willful, plaintiffs refer to the numerous requests ASCAP representatives made to defendant, beginning in 1987, to become an ASCAP licensee. It appears that during the course of these communications, "ASCAP reminded the defendant of his obligations under the copyright laws, and pointed out that any unauthorized performance of copyright works in the ASCAP repertory would constitute infringement under the [Act]." (Hoynes Aff. ¶ 8.) Notwithstanding these admonitions, defendant refused to secure a license. Defendant offers as evidence of innocent infringement that he neither hired Perez, knew whether she had permission to perform the songs, nor attended the musical performance.

Rather then help defendant establish that his infringement was innocent, his evidence further demonstrates that he turned a blind eye towards copyright infringements on the ELP premises. The Court finds that plaintiffs have carried their burden to show willful infringement and that the statutory damages award must be sufficient to deter defendant from permitting further copyright infringements to occur at ELP.

Having considered all of the relevant factors, the Court determines that plaintiffs are entitled to a statutory damages award in the amount of $1000 per copyright infringement, for a total of $5000. This sum should be sufficient to compensate plaintiffs for lost license fees, punish defendant for ignoring ASCAP's warnings and potential copyright infringements in the ELP recreation hall, and to deter defendant and others in similar positions from permitting unauthorized public performances of copyrighted songs.

### c. Costs and Fees

Under § 505 of the Act, "the court in its discretion may allow the recovery of full costs ... [and] award a reasonable attorney's fee to the prevailing party as part of the costs." Plaintiffs seek to recover $5,361 in attorney's fees and $391.25 in other costs. (Peebles Aff. ¶¶ 19–20.)

The contradictions, elisions, and omissions in plaintiffs' papers disinclines the Court to award attorney's fees. *See, e.g., Humphrey v. Columbia Records*, 9 USPQ2d 2064, 124 F.R.D. 564 (S.D.N.Y.1989) (awarding defendants attorney's fees and costs against plaintiff's attorney in response to plaintiff's misconduct during course of baseless copyright infringement action). First, the complaint's mischaracterization of defendant as the "owner" of ELP reflects inadequate research, hasty preparation, or disingenuousness. Second, after learning at defendant's deposition that Amany, rather than defendant, owns ELP, plaintiffs failed to amend the complaint to name Amany as a party, perhaps on the assumption that Amany would invoke legal force in opposition to plaintiffs' claims only if Amany were a named defendant. Third, although counsel's memorandum corrects his earlier mischaracterization of defendant as the owner of ELP, it

fails to mention important facts surrounding Perez's performance at the ELP recreation hall, such as the person to whom defendant rented the hall and who subsequently arranged for Perez to perform there, and instead refers to "[d]efendant's performance of the copyrighted compositions at issue." (D's Mem., at 7.) The omission and mischaracterization of these facts, revealed to plaintiffs at defendant's deposition, suggest that plaintiffs deliberately failed to address the issue of vicarious liability, perhaps on the assumption that a *pro se* defendant and the Court would overlook this singular potential barrier to defendant's liability. Although the Court might condone the manner in which counsel has conducted this litigation if the defendant had enlisted the assistance of counsel, defendant's *pro se* status triggers special duties to the Court and to defendant in light of which plaintiff's performance is simply inappropriate. Counsel's conduct, however, will not deter the Court from permitting plaintiffs to recover the other costs they have incurred in this matter.

### III. Conclusion

In order to secure copyright holders' exclusive rights in their works, the Act renders "all united in infringing ... responsible for the damages resulting from infringement." *Gross v. Van Dyk Gravure Co.*, 230 F. 412, 414 (2d Cir.1916); *see also Gershwin*, 443 F.2d at 1162 n. 7. As the manager and operator of ELP who rented out its recreation hall and permitted a band to perform there, defendant exposed himself to vicarious liability for any infringing songs the band publicly performed in the hall. The principle of vicarious liability helps to ensure that "all united in infringing" artists' copyrights are made responsible for the infringement.

**IT IS HEREBY ORDERED**

That plaintiffs' motion for summary judgment is GRANTED;

That defendant and all persons acting under his control, permission, and authority are hereby enjoined from publicly performing the musical compositions entitled "Tequila Sunrise," "Chattahoochie," "I Feel Lucky," "Let's Twist Again," and "Jailhouse Rock," from permitting them to be played publicly at ELP or at any other place defendant owns or controls, and from assisting in any way the public performance of these songs;

That defendant shall pay to plaintiffs the sum of $5000 (five thousand) in statutory damages;

That defendant shall reimburse plaintiffs for costs associated with this litigation in the sum of $391.25.

**IT IS SO ORDERED.**